**GEORGE M. KAPOLCHOK**
**KAPOLCHOK LAW OFFICES, LLC**
**360 K Street, Suite 100**
**Anchorage, Alaska 99501**
**Phone: (907) 278-8850**
**Fax: (907) 278-8860**
**E-mail: lawoffices@kapolchok.com**

**Attorney for Plaintiffs**

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOHNNIE CRISCO and THE ESTATE OF ANNA CRISCO by HER PERSONAL REPRESENTATIVE, ROBIN BOOKER, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. 3:03-cv-00011-JKS <br><br> **PLAINTIFFS' MOTION TO ADD A LOCAL EXPERT MEDICAL WITNESS AND TO BE ALLOWED TO DEPOSE DEFENDANT'S EXPERT** |

### Introduction

The court has recently set this matter for trial on December 5, 2006. Progression of this case has been detoured by a number of events that will be described below. Despite these interruptions, discovery has proceeded in a cordial and professional

manner. However, with trial approaching in 7.5 months, plaintiffs' counsel and the government's attorney have been unable to reach agreement on two issues:

1) whether plaintiffs can add a local expert medical witness at this point in the case, and

2) whether plaintiffs are allowed to depose defendant's medical expert witness.

### Facts and Procedural History of the Case

This is a medical negligence case brought pursuant to the Federal Tort Claims Act. In January of 2001, plaintiff Crisco underwent a total knee arthroplasty by Dr. Umesh T. Bhagia under the Alaska VA Healthcare. Plaintiff Crisco contends the knee was improperly implanted with a 7° anterior slope as opposed to a 7° posterior slope, requiring the knee joint to be removed and replaced properly.

Suit was filed in January of 2003. At that time, Mr. Crisco had had three corrective surgeries and suffered from significant infection. During the first year of the litigation, the infection refused to submit to therapy. In February of 2004, Mr. Crisco, upon the advice of his doctors, elected an above-knee amputation. The uncertainty of Mr. Crisco's situation caused, as the court file reflects, a number of stipulations extending discovery and other deadlines. In June of 2004, Mr. Crisco was involved in an auto accident causing injury to his amputated leg. Plaintiffs' counsel suspended any work toward readying the medical case, and turned to resolving the auto injury. This was accomplished by August of 2005. Soon thereafter, co-plaintiff Anna Crisco died after over 40 years of marriage to John Crisco.

### Request to Add Medical Expert Witness

All of Mr. Crisco's revisionary surgeries and eventual amputation were performed by Anchorage orthopedic surgeon Robert J. Hall, M.D. Dr. Hall went on

record back in 2002 that the malposition of the original arthroplasty component was a deviation from the standard of practice and caused mechanical pain, warranting redoing it. Dr. Hall also confirmed that the standard of orthopedic practice and the manufacturer of the knee provide for a posterior slope of approximately 7° and never an anterior slope.

Plaintiffs are cognizant that to prevail in a medical negligence case, they must present credible expert medical testimony by a physician in the same field of practice as the defendant, and establish that the defendant physician or institution fell below the standard of care. The Alaska Statutes refine this condition precedent in AS 09.55.540.

Dr. Hall issued a letter expressing his findings and opinions, and submitted to a full deposition by the defendant on August 11, 2005; however, Dr. Hall did not prepare an expert opinion as contemplated by Federal Rule of Procedure 26(a)(2) as an expert "specially employed to provide expert testimony."

The government raised the issue that Dr. Hall's failure to provide a report prejudices them and may prevent him from testifying as to the standard of care.

When Dr. Hall was approached to become an "expert" beyond his role of treating physician, he expressed reluctance because he would be required to report this to his malpractice carrier, and "heard" from his colleagues that this might lead to denial of future coverage. Dr. Hall also advised that professional associations of physicians are cautioning and some are ostracizing members if they testify on behalf of plaintiffs.

Faced with this consequence of "tort reform," plaintiffs' attorney contacted orthopedic surgeon Declan R. Nolan, M.D., a seasoned Anchorage physician who is now "semi-retired." Dr. Nolan expressed no reservations about doing a full review and offering his opinions. His work has been accomplished save that Dr. Nolan needs certain actual film x-rays of the knee which are in the possession of the government. These were requested six weeks ago from the government.

As soon as the films are disgorged, Dr. Nolan can submit a final report in two to three weeks. This will provide the government over six months to review the report and depose Dr. Nolan.

### Request to Depose Defendant's Expert

Defendant disclosed an expert report of Dr. Theodore Vigeland on June 7, 2004. It should be noted that this report was not given by plaintiffs to Dr. Nolan or Dr. Hall. It should also be noted that Dr. Hall's deposition was taken after the report, and plaintiffs assume that Dr. Vigeland will review and comment on that information. Plaintiffs request to depose Dr. Vigeland at his and the government's convenience some time this summer, well in advance of trial.

A proposed order is lodged concurrently herewith.

DATED: April 28, 2006                s/George M. Kapolchok
                                     George M. Kapolchok
                                     Alaska Bar No. 7510071
                                     Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on this 28th day
of April, 2006, a true and correct
copy of the foregoing document was
served electronically upon:

Richard L. Pomeroy
Assistant U.S. Attorney


s/Paula Beneke
Kapolchok Law Offices, LLC