NELSON P. COHEN
United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail:  richard.pomeroy@usdoj.gov

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOHNNIE CRISCO and THE ESTATE OF ANNA CRISCO BY HER PERSONAL REPRESENTATIVE, ROBIN BOOKER,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 3:03-cv-00011-HRH<br><br>**DEFENDANTS' TRIAL BRIEF** |

Defendant, United States of America, through counsel, in accordance with the pretrial order and Ak. LR 39.2, presents its trial brief on the contested issues in this case.

### I.   Parties

The Plaintiffs are Johnnie Crisco, and Robin Booker, as the personal representative of the estate of her mother, Anna Crisco.   The Defendant in this action is the United States of America. The Department of Veterans Affairs ("VA") provided the medical care that is the subject of this action.

## II.  Nature of Action

This is a medical malpractice action against the United States brought pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 et. seq.  This court has jurisdiction over the case pursuant to 28 U.S.C. § 1346(b)(1).  Jurisdiction is not disputed.

In a medical malpractice case under Alaska substantive law, Mr. Crisco has the burden of proving by a preponderance of the evidence the following:

> (1)   The degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the field or specialty in which the defendant is practicing;
>
> (2)   That the health care providers lacked this degree of knowledge or skill or that the health care providers failed to exercise this degree of care; and
>
> (3)   That as a proximate cause of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

AS 9.55.540(a).  There is no presumption of negligence on the part of the defendant.

AS 9.55.540(b).  Plaintiff has the burden of proving the applicable standard of care.

Kormin v. Mallin, 858 P.2d 1145, 1148 fn.3 (Alaska 1993).

Plaintiffs are not making any claims for economic damages.  The standards and limits for claims for non-economic damages under Alaska law are set out by statute:

> (a)  In an action to recover damages for personal injury or wrongful death, all damage claims for non-economic losses shall be limited to compensation for pain, suffering, inconvenience, physical impairment, disfigurement, loss of enjoyment of life, loss of consortium, and other non-pecuniary damage.
>
> (b) Except as provided under (c) of this section, the damages awarded by a court or a jury under (a) of this section for all claims, including a loss of consortium claim, arising out of a single injury or death may not exceed $400,000 or the injured person's life expectancy in years multiplied by $8,000, whichever is greater.

(c) In an action for personal injury, the damages awarded by a court or jury that are described under (b) of this section may not exceed $1,000,000 or the person's life expectancy in years multiplied by $25,000, whichever is greater, when the damages are awarded for severe permanent physical impairment or severe disfigurement.

(d) Multiple injuries sustained by one person as a result of a single incident shall be treated as a single injury for purposes of this section.

AS 09.17.010.[1]   Alaska has rejected the collateral source rule for medical malpractice actions. AS 09.55.548(b); Reid v Williams, 964 P.2d 453, 455 (Alaska 1998).  Prejudgment interest and attorneys fees are not available to plaintiff under the FTCA.  28 U.S.C. §§ 2674 & 2678; Anderson v. United States, 127 F.3d 1190, 1191 (9th Cir. 1997).

No legal issues have been previously decided by the court.

Mr. Crisco seeks damages for injuries he claims were the result of a total knee replacement surgery performed on January 10, 2001.  The facts of Mr. Crisco's care are not contested and are outlined in greater detail in the Stipulated Facts.  Briefly, Mr. Crisco informed the VA in November, 2000, that he wanted to proceed with a replacement of his left knee after the first of the year.  He was scheduled for surgery in January, 2001.  On January 9, 2001, Mr. Crisco was informed by Dr. Umesh Bhagia of the risks of surgery, including the risk of infection, implant failure, and the need for further surgery.  X-rays showed advanced degenerative joint disease in the left knee, with total loss of medial joint space and osteophyte formation.  His left knee range of motion was 5 - 120 degrees.  The surgery was performed on January 10, 2001 at the hospital at Elmendorf Air Force Base, Alaska..  The x-ray taken immediately after showed normal alignment of the components.  Mr. Crisco complained of significant pain after the

---

[1] The limits established in AS 09.55.549 are not applicable to this case.

surgery. He was given IV morphine. On January 13, 2001, he reported that his knee was feeling good and he was ambulating with crutches. He was discharged that day.

Mr. Crisco contends that the tibial component was incorrectly installed, and that the misaligned tibial component was the cause of his post-operative pain. He returned several times to the VA after the surgery complaining of knee pain. Mr. Crisco obtained three "second" opinions from orthopedic surgeons employed by the VA or the United States Air Force concerning his claims of post-operative knee pain. None of these doctors noted any misalignment of the tibial component or thought that there was a mechanical cause for Mr. Crisco's pain. Additional physical therapy and consultation with a pain specialist were prescribed. Mr. Crisco obtained a "fifth" opinion from an orthopedic surgeon in private practice, Robert J. Hall. Dr. Hall opined that the tibial component was misaligned and that Mr. Crisco should have a revision surgery. Dr. Hall performed the revision surgery on November 7, 2001. After the second surgery, Mr. Crisco developed a penicillin-resistant staph infection. A third surgery was performed to remove the revision in order to treat the infection. A fourth surgery was then performed to implant a new knee. Unfortunately, the infection persisted. The inability to treat the infection eventually resulted in the amputation of Mr. Crisco's left leg in February, 2004.

On June 8, 2004, Mr. Crisco was involved in an automobile accident in which he injured his left leg. A lawsuit was filed in state court that was settled on October 28, 2004. Mr. Crisco received $58,562.33.

In early November, 2004, Anna Crisco died. Her daughter, Robin Booker, has been substituted as the administrator of her estate.

Mr. Crisco was diagnosed with lung cancer in 2006. He had surgery to remove part of his lung.

Damages are also sought to compensate for the consortium lost by Mr. Crisco's late wife, Anna, from 2001 to her passing in November, 2004.

### III.  The United States' Defense on Liability

Plaintiff will present the testimony of Dr. Hall that his November, 2001 surgery was necessitated by the alleged negligence of Dr. Bhagia. He is expected to testify that Dr. Bhagia installed tibial component with an anterior slope and that the anterior slope was the cause of Mr. Crisco's pain.

The Defendant will present the testimony of five orthopedic surgeons who do not agree with Dr. Hall's opinion. Dr. Bhagia performed the initial surgery and provided subsequent care for Mr. Crisco's pain complaints. Dr. Greg Schumacher, an orthopedic surgeon with the United States Air Force saw Mr. Crisco in May, 2001 for a second opinion. His opinion, found at his chart note at Exhibit D-1 and his testimony, preserved in a deposition at Exhibit D-2, was that "it is probably best to continue to wait and work on range of motion." Dr. Howard Chansky, chief of Orthopedics at the Seattle VA hospital, saw Mr. Crisco for another second opinion in August, 2001. His opinion was that Mr. Crisco's pain was consistent with reflex sympathetic dystrophy (RSD) and not with any surgically amenable cause.[2] An aggressive physical therapy program was recommended. Finally, Mr. Crisco was also referred to Dr. Peter Ross for a second opinion in October, 2001. Dr. Ross, now in private practice, was at the time an orthopedic surgeon with

---

[2] Exhibit D-5 at 7.

the U. S. Air Force. His opinion, found at his chart note at Exhibit D-6 and his testimony, preserved in a deposition at Exhibit D-36, was that he agreed with the possibility of RSD as an etiology and recommended that the patient keep his appointment with the pain clinic and continue with physical therapy.

The Defendant will also present the testimony of its expert, Dr. Ted Vigeland, professor of orthopaedic surgery at the Oregon Health & Science University. His opinion is that Dr. Bhagia met the standard of care in the operation and post-operative care. Mr. Crisco's pain was not caused by the placement of tibial component, even if there was an anterior slope to the component. He has suggested that RSD or infection are the likeliest sources of Mr. Crisco's pain.

Total knee replacements are not 100% effective. Revision surgery is necessary without negligence. Despite the obviously poor outcome that Mr. Crisco has experienced, he is not entitled to an award of damages because Dr. Bhagia was not negligent.

### IV.   The United States' Position on Damages

Plaintiffs claims are for non-economic damages. If the United States is found to be liable for part or all of the damages, it should only be liable for the non-economic damages beyond what would be expected from the normal pain and discomfort of knee replacement surgery. Mr. Crisco's recovery, if any, should also be reduced, or take into account, the amount of money that he recovered in settlement of his June, 2004 automobile accident.

### V.   Evidentiary Issues

Defendant is not aware of evidentiary issues that will require attention prior to trial.

Respectfully submitted this 6th day of September, 2007, in Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/Richard L. Pomeroy
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov
Alaska Bar No. 8906031

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2007,
a copy of the foregoing DEFENDANT'S
TRIAL BRIEF was served electronically
on George M. Kapolchok, Esq.

s/ Richard L. Pomeroy