**GEORGE M. KAPOLCHOK**
**KAPOLCHOK LAW OFFICES, LLC**
360 K Street, Suite 100
Anchorage, Alaska 99501
Phone: (907) 278-8850
Fax: (907) 278-8860
E-mail: **lawoffices@kapolchok.com**

**Attorney for Plaintiffs**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOHNNIE CRISCO and THE ESTATE OF ANNA CRISCO by HER PERSONAL REPRESENTATIVE, ROBIN BOOKER,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 3:03-cv-0011-HRH<br><br>**PLAINTIFFS'**<br>**TRIAL BRIEF** |

Plaintiffs Johnnie Crisco and the Estate of Anna Crisco, by and through their attorney Kapolchok Law Offices, LLC, hereby submit their trial brief.

**I. Parties**

The plaintiffs in this action are Johnnie Crisco and his daughter Robin Booker, as the personal representative of Anna Crisco, the deceased wife of Mr. Crisco. Anna Crisco died in the course of this litigation. The defendant in this action is the United

States of America because the medical care which is the subject of this action was provided by the Department of Veterans Affairs.

## II. Nature of the Action

This is a Federal Tort Claims Act case in which the plaintiffs allege improper medical care. Jurisdiction is not disputed pursuant to 28 U.S.C. § 1346 (b)(1).

Alaska substantive law with respect to medical negligence controls. AS09.55.540(a). Specifically in this case, plaintiffs contend that Dr. Umesh T. Bahgia fell below the standard of care when he attempted to perform a total left knee replacement on January 10, 2001. At that time, Dr. Bahgia was an employee of the Alaska VA Healthcare System. The complaint asserts malpositioning of the lower component of the knee which required a revision surgery leading to an amputation.

(a) <u>The Plaintiffs:</u>   Johnnie Fletcher Crisco was born in Rockingham, North Carolina on August 14, 1938. His family were sharecroppers and Johnnie began helping raise principally tobacco and cotton at the age of seven. Formal education ended at the seventh grade and Johnnie went to work at a local textile mill until he enlisted in the Coast Guard in 1958. He and Anna married in 1959. In 1960, while on duty on an ice-breaking vessel, Mr. Crisco suffered an injury to his lower trunk area and testicles which forced him to accept an honorable discharge for medical reasons. Despite being rated as 100% disabled for military service, Mr. Crisco immediately went to work and has been fully employed for forty years until the knee surgery in 2001. His jobs have included bus and truck driving, factory worker, carpet installer, farming, and construction pipe fitter.

Johnnie and Anna moved to Alaska in 1996 to be closer to their only daughter who is married and has two children. Again, Johnnie returned to full time work at the Chugiak Senior Center as a cook and handyman. Just prior to the 2001 left knee replacement, he worked at Carr's grocery store. When not working, Mr. Crisco primarily doted on his grandchildren, and pursued fishing and

moose hunting as a passion. Mr. Crisco throughout his life maintained a high level of physical activity.

(b) <u>Other Medical Conditions</u>: It is not disputed that Mr. Crisco has an extensive medical history.

    1960 - surgical repair of the on-duty Coast Guard injuries

    1978 - bilateral knee arthroscopy for cartilage.

    1983 - bilateral knee diagnosis of osteoarthritis

    1984 - right knee joint replacement. Given the state of artificial knees, this prosthesis actually "wore out" and was replaced. It continues to serve him well today, despite being required to do double duty.

    1986 - high tibial valgus osteotomy on left leg to relieve pressure on knee.

    1996 - gall bladder removed.

    1998 - back surgery

    1999 - shoulder surgical repair.

All of the above were successful procedures without significant complications.

(c) <u>Left Knee Replacement January 10, 2001</u>

By 2001, Mr. Crisco's left knee was becoming progressively painful and was interfering with his daily activities. The x-rays showed degeneration of the left knee, total loss of the medial joint space, and osteophyte formation. There is no dispute that Mr. Crisco was an appropriate candidate for a total knee replacement. Mr. Crisco was 62 years of age, thin, active, and in generally good health.

Dr. Bahgia with no other surgeon attending, performed the total left knee replacement on January 10, 2001 at the DOD/VA joint venture hospital at Elmendorf Air Force Base, in Anchorage, Alaska. Dr. Bahgia elected to use a total knee system manufactured by Profix. The system is composed of a femoral implant (upper leg) and a tibial implant (lower leg). The Profix system provides a

tibial alignment assembly and a tibial cutting block to establish the proper location on the tibia and to ensure that the proper amount of bone is removed. A tibial secondary prep guide is also supplied to establish the proper angle of the cut to the bone.

It is undisputed that the tibial component of the Profix Total Knee System used by Dr. Bahgia is designed and recommended to be installed with a 7° "posterior slope". In other words, in viewing the leg, from the side (lateral view) the lower leg is offset by 7° towards the back i.e. the person's heel. Based on Mr. Crisco's x-rays and the deposition of defendant's expert, it is undisputed that Dr. Bahgia's surgical technique was deficient - that is, the 7° angle is anterior as opposed to posterior. Thus, based on simple geometry, Mr. Crisco's knee was approximately 14° off. There may be a factual dispute by a degree or two because of the quality of the x-rays.

(d) Post Surgical Course

On January 13, 2001, Mr. Crisco reported his knee was feeling good, he was ambulating with crutches and he was discharged to go home. The standard and accepted protocol that Mr. Crisco was told to follow was to use the knee and perform various exercises including weight bearing walking. The more Mr. Crisco did this, however, the more pain he experienced. He returned in ten days but was told all was fine. The pain caused him to slip on a few stairs on January 28 and he went to have his leg checked out, with no damage found to the knee. On February 28, Mr. Crisco slipped on some ice, fell and bumped his head but did not injure his knee. The knee pain however continued and increased with activity.

By May of 2001, Mr. Crisco was becoming very frustrated. He requested a second opinion and was seen by Dr. Greg Schumacher, a new orthopedic surgeon at Elmendorf. Dr. Schumacher recorded knee pain with weight bearing, pain not radicular in nature, no fever or chills, pain persisting since surgery, knee aspiration

and blood that revealed no infection, no bacteria, normal blood work and pain coming from the knee.

Three months later, after nothing improved, Mr. Crisco sought another opinion and was sent to Seattle. The VA neglected to send his records but rather than wait for them, Dr. Chansky saw Mr. Crisco for less than ten minutes, took no x-rays, did no diagnostic tests and opined in his chart note of August 27, 2001 that his "impression is that he has a reflex sympathetic dystrophy-like syndrome." Dr. Chansky also states that he doubts an infection and doubts any nickel allergy.

On October 2, 2001, Mr. Crisco saw Dr. Peter Ross for another opinion on his knee and with respect to an arm injury. Dr. Ross agreed with possible RSD or possible nickel allergy but no infection. Dr. Ross went on to treat the arm.

(e) Dr. Robert Hall

On October 5, 2001, Mr. Crisco was able to see Dr. Robert Hall, a board certified private practice orthopedist in Anchorage. Dr. Hall did a thorough exam, history, and ordered appropriate x-rays and a bone scan. X-rays and VA records were also reviewed. When all the tests were completed and reviewed, Dr. Hall on a follow-up visit recommended a surgical revision to his left knee replacement of January 10, 2001. Dr. Hall explains:

> **The decision to offer the patient revision arthroplasty was based on his history of increased pain after his original surgery, the bone scan results, and the x-ray findings. The findings of the increased activity within the patella and also within the proximal tibia were consistent with the diagnosis of mechanical pain related to a mild malposition of the tibial component. This type of malposition would cause increased strain on the patella and also increased strain on the tibial baseplate where it is attached to the tibia causing increased uptake in both areas which was noted on the bone scan. Therefore, it was felt that the left knee pain was related to his original surgery in**

> **January of 2001. The revision surgery was undertaken in an attempt to try and relieve Mr. Crisco's pain that was felt to be the result of malposition of components at his original arthroplasty surgery.**
>
> **Plaintiffs' Exhibit 1**
> **Letter of Dr. Hall of April 2, 2002**

The revision surgery went very well, corrected the malposition, excellent placement was obtained and the pain was relieved. Dr. Hall had measured a 7° anterior slope. Mr. Crisco's new knee, a Zimmer, had the recommended 7° posterior slope.

It is undisputed that revision surgery has a significantly higher risk of infection. Unfortunately for Mr. Crisco, an *s. aureous* infection, resistant to penicillin arose from the corrective surgery and thrived. In late December of 2001, Dr. Hall removed the knee and casted Mr. Crisco's leg in order to treat the infections. Despite antibiotic treatment by infectious disease specialist, Dr. Bundtzen and hospitalization at both Providence Hospital and Alaska Regional Hospital, the infection persisted. Dr. Hall attempted surgical implantation of antibiotics. The infection diminished and a new knee was reimplanted in January of 2002. Through 2002 and 2003, Mr. Crisco battled the infection without success. On February 25, 2004, Mr. Crisco's left leg was amputated above the knee.

### III. Issue of Liability and Damages Sought

The liability issue before the court is whether Dr. Bahgia's implantation of the Profix knee with a 7° anterior slope instead of the recommended 7° posterior slope was below the standard of care and whether this caused the pain which led to the revision surgery.

Plaintiffs claim only non-economic damages under AS09.17.010 for pain, suffering, inconvenience, physical impairment, disfigurement, loss of enjoyment of life

and loss of consortium. Plaintiffs claim that Mr. Crisco suffered severe physical impairment and disfigurement under AS09.17.010 (c).

### IV. The United States' Defense

The government will present a VA orthopedic surgeon, Dr. Vigelund, who has offered the opinion that the anterior slope of the tibial component was not the cause of Mr. Crisco's knee pain but that RSD (reflex sympathy dystrophy) or an uncultured infection was the cause.

### V. Damages

The government claims a credit of offset for a recovery received from an auto accident in June 2004. Plaintiffs' position is that the injuries sustained are of a different nature and that no credit is appropriate. At the time of the accident, Mr. Crisco had already had his leg amputated and was breaking in a new artificial limb. The collision jammed the prosthesis into his leg requiring surgery and a long healing period before a new leg could be fitted.

### VI. Evidentiary Issues

Defendant has agreed that Dr. Hall as a treating physician can satisfy the statutory requirements of expert testimony with regard to standard of care and causation.

Plaintiffs are not aware of any other evidentiary issues that need to be addressed prior to trial.

DATED this 10th day of September, 2007, in Anchorage, Alaska.

KAPOLCHOK LAW OFFICES, LLC


/s/ George M. Kapolchok
George M. Kapolchok
Attorney for Plaintiffs
360 K Street, Suite 100
Anchorage, AK 99501
Phone: (907) 278-8850
Fax: (907) 278-8860
E-mail: **lawoffices@kapolchok.com**
Alaska Bar No. 7510071


**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of September 2007, a true and correct copy of the foregoing document was served electronically upon:

Richard L. Pomeroy
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West 7th Avenue, #9, Room 253
Anchorage, AK  99513-7567


/s/ Paula Beneke
Kapolchok Law Offices, LLC