**GEORGE M. KAPOLCHOK**
**KAPOLCHOK LAW OFFICES, LLC**
**360 K Street, Suite 100**
**Anchorage, Alaska 99501**
**Phone:  (907) 278-8850**
**Fax: (907) 278-8860**
**E-mail: lawoffices@kapolchok.com**

**Attorney for Plaintiffs**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOHNNIE CRISCO and THE ESTATE OF ANNA CRISCO by HER PERSONAL REPRESENTATIVE, ROBIN BOOKER,<br><br>    Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. 3:03-cv-0011-HRH<br><br>**[PROPOSED]**<br>**FINDINGS OF FACT,**<br>**CONCLUSIONS OF LAW,**<br>**PRELIMINARY DECISION,**<br>**AND ORDER** |

## Introduction

Plaintiffs Johnnie Crisco and Robin Booker, as the representative of the Estate of Anna Crisco, sue the United States for damages in connection with a medical procedure.  Jurisdiction is pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2401, and 2671.  The United States is deemed to employ the Veterans

Administration ("VA") health care providers whose care, plaintiffs contend, was negligent and caused injury to Crisco. Under the FTCA, the government's conduct is measured by standards governing the conduct of private citizens under the law of the state where the action arose. In this case, we look to the law of Alaska to determine the relevant law.

The case was tried to the Court sitting without a jury. Trial began on Monday, September 17, 2007, and ended on Tuesday, September 18, 2007. At the completion of the case, the Court concluded that the parties should submit simultaneous written final argument and proposed findings of fact and conclusions of law. Transcripts of all the medical testimony were made available both by trial transcript and deposition transcript. This decision will serve as the Court's final findings of fact on the issues of negligence, causation and damages.

No legal issues appear to be in dispute, but a general discussion of the law applicable to cases involving claims of improper health care is appropriate.

## Legal Discussion

In order to prove a claim of negligence, a plaintiff must satisfy the following elements: (1) duty, (2) breach of duty, (3) causation, and (4) damages. In health professional malpractice cases, the duty and the standards for determining a breach of duty are set by statute, AS 9.55.540, which provides:

   (a) In a malpractice action based on the negligence or willful misconduct of a health care provider, the plaintiff has the burden of proving by a preponderance of the evidence:

     (1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the field or specialty in which the defendant is practicing;

     (2) that the defendant either lacked this degree of knowledge or skill, or failed to exercise this degree of care; and

     (3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care, the plaintiff suffered injuries that would not otherwise have been incurred.

   (b) In malpractice actions there is no presumption of negligence on the part of the defendant.

At one time the statute established a "local standard of care." *Priest v. Lindig*, 583 P.2d 173 (Alaska 1978), though the Alaska Supreme Court concluded that at least for the larger Alaska communities, there was no difference between a local standard and a national standard. *Id.* Amendments to the statute have eliminated the local preference in favor of a national standard of care. The statute is specific that in malpractice actions there is no presumption of negligence on the part of a defendant. This was apparently included to eliminate *res ipsa loquitor* as a basis for a finding of health care professional negligence.

The Alaska Supreme Court has concluded that except where negligence would be obvious to a layperson, expert testimony is required to evaluate a practitioner's performance. See *Parker v. Tomera*, 89 P.3d 761 (Alaska 2004), and *Trombley v. Starr-Wood Cardiac Group*, 3 P.3d 916 (Alaska 2000).

The surgical implantation of a total knee replacement is not a matter within the common experience of lay people; therefore, we must depend upon medical expert testimony to answer the questions posed by this case.

### **Factual Discussion and Findings**

Plaintiffs present orthopedic surgeon Robert Hall to support their case. Dr. Hall is actually a "hybrid witness," as he treated Mr. Crisco extensively from his first revision surgery of November 7, 2001, through and after the amputation of the leg on February 25, 2004. Dr. Hall tells us that based on his physical examination of Mr. Crisco, his review of the VA medical chart including x-rays and lab studies, and then complemented by a bone scan (which he interpreted) and additional x-rays, that he concluded that Mr. Crisco's painful knee was a result of the tibial component being implanted by Dr. Bhagia with a 7° anterior slope. Dr. Hall explains that this malposition causes a mechanical levering and a flexion instability. Interestingly, the Government's expert, Dr. Vigeland, agrees that an anterior slope could cause a flexion instability and used the example of going downstairs wherein the femur would ride forward.

Dr. Hall relied to a great degree on his interpretation of the bone scan to support his findings of mechanical malfunction, which, he said, would cause "hot spots"

or increased uptake in the very area where he suspected a problem. It is significant that none of the medical experts presented by the Government reviewed or could remember reviewing the bone scan.

There is apparently no literature or evidence based medicine dealing with studies of total knee replacements with anterior slopes. Most logically, this is because, as Dr. Vigeland testified, they are to be avoided and usually are. The Court agrees with Dr. Hall, and finds the anterior slope was indeed a malposition which caused a painful knee, that this was a surgical technique error, and that Dr. Bhagia's surgery was below the standard of care and therefore negligent.

The Government's suggestion that the painful knee was caused by RSD is unpersuasive. Dr. Chansky's impression was based on a cursory examination without the benefit of the medical records. Dr. Vigeland actually agrees with Dr. Hall, and does not believe Mr. Crisco had RSD. Dr. Hall stated that RSD would present a bone scan that showed diffuse or widespread "uptake" and that this was not present. Indeed, the doctors tell us that RSD is not treated by surgery, and that post Dr. Hall revision, there were no symptoms that resembled RSD.

The Government's other theory to support a painful knee is infection. The evidence was undisputed that all the VA lab work prior to the visit to Dr. Hall was negative for infection. Dr. Hall had Dr. Makin do a pre surgery workup and tests, and this showed no infection. During the surgery Dr. Hall sent fluid and tissue samples from the knee to pathology, and once again infection was ruled out. The Government's attempt to explain the painful knee by suggesting infection fails. In addition, the "hot

spots" on the bone scan which could have been either infection or mechanical stress are confirmed now to be stress. Dr. Hall was correct.

No evidence was presented to challenge the decision to revise the knee, that it was done improperly or that the horrible course of infection and multiple surgical attempts to save the knee were somehow a supervening or intervening cause. Therefore, the causation question is answered in favor of the plaintiffs.

No formula exists to award non-economic damages nor for loss of consortium. The Court has reflected on the testimony of Dr. Hall, Johnnie Crisco, Anna Crisco's deposition, and the testimony of Arthur Bowen and Robin Booker. The award to be made will be as follows:

| | | |
|---|---|---|
| Johnnie Crisco | Past damages | _____ |
| | Future damages | _____ |
| Estate of Anna Crisco | Past damages | _____ |

The plaintiffs' counsel is directed to file an appropriate form of judgment accompanied by a motion to enter a final judgment seeking any appropriate additions to the award as provided by law.

DATED: _____    _____
                                              Senior Judge H. Russel Holland
                                              United States District Court